(No. 78-CV-0667—)

*In re* APPLICATION OF MATTHEW P. McNULTY.

*Opinion filed May 29, 1981.*

MATTHEW P. McNULTY, *pro se*, for Claimant.

WILLIAM J. SCOTT, Attorney General (ALAN R. BOUDREAU, Assistant Attorney General, of counsel), for Respondent.

PER CURIAM.

This claim arises out of an incident that occurred on August 10, 1978. Matthew P. McNulty, claimant, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. Ill. Rev. Stat. 1979, ch. 70, par. 71 *et seq*.

The Court entered an Order on July 7, 1980, based on the Investigatory Report of the Attorney General, the application and the form submitted by the Claimant, which Order found that Claimant's injury was substantially attributable to the wrongful act of patronizing a prostitute and that Claimant has not met a required condition precedent for compensation under the Act.

Pursuant to Section 9 of the Act, Claimant requested a hearing.

Evidence was taken by the Court at a hearing conducted by Martin C. Ashman, a Commissioner of this Court.

Claimant testified that on August 10, 1978, he had been drinking at a tavern, having consumed seven drinks of beer in a little over a three hour period from 11 o'clock P.M. to shortly after 2 o'clock A.M.

After the drinks at the last tavern, he proceeded by automobile to the intersection of Washington Blvd. and Cicero Avenue, Chicago, Illinois, where he was approached by a girl while he was in the automobile. She said something that Claimant does not fully remember but remembers something about sex, and Claimant answered with a "smart remark". While standing outside Claimant's vehicle on the driver's side, she grabbed Claimant's pocketbook through the window and ran. Claimant denied that the girl had ever been in his vehicle. Claimant got out of his car and chased her. She

yelled for help and someone commenced shooting. He heard six shots and one of the bullets knocked him down. Shooting continued while he was on the ground. He picked himself up and drove to the home of his ex-wife where he became unconscious in the car. A policeman discovered him and he was taken to St. Anne's Hospital where he was questioned by the police. He told the police that he could not identify his assailants.

After Claimant's release from the hospital, he was called at 3 o'clock A.M. by a policeman. The police officer told him that the police had captured his assailants and asked if Claimant could identify them. Claimant said that he could not identify them and Claimant was told to go to court but was never given a court date.

On cross examination, Claimant admitted that he had described the girl as tall and wearing a yellow shirt-waist blouse and that the Claimant was not beaten throughout the incident.

Officer James Linzy of the Chicago Police Department testified that on August 9, 1978, while off duty he was proceeding West on Washington Street near Cicero Avenue in Chicago. As he approached the intersection he observed a female Negro jump out of the passenger side of a van-like vehicle which was stopped in the middle of the street. He then observed Claimant exit the driver's side of the vehicle and chase the girl. The girl screamed and two male Negroes began to chase the Claimant as Claimant continued to chase the girl. Claimant caught the girl and grabbed her and one of the male Negroes struck the Claimant with a tire iron. Claimant then chased the male Negro and another male Negro fired a shot at Claimant.

The officer then pursued the assailants by car, firing two shots at the assailants.

Some weeks later, Officer Linzy, while passing by the same neighborhood, recognized Claimant's assailants and arrested them. The officer called Claimant and told Claimant that he had arrested the assailants and that he, Officer Linzy, could identify them and asked Claimant if he wanted to sign a complaint against the assailants. Claimant refused stating that he just wanted to forget it.

The Court finds that judging from the attitude and demeanor of the witnesses, the testimony of Officer Linzy was more credible than that of Claimant. Officer Linzy, at a risk of his own life helped save Claimant's life. Thereafter, by alert police work he was able to apprehend the assailants and was able to recognize the assailants. Officer Linzy's testimony was clear and unequivocal. He had no interest in not telling the truth and his testimony was clear and convincing that the Claimant refused to sign a complaint against his assailants. Claimant's testimony, to the contrary, was vague and not credible.

It is hereby ordered that this claim be, and is, hereby denied.